USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-14-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SUSAN ARKUN,

                             Plaintiff,

             -v-

UNUM GROUP, UNUMPROVIDENT CORPORATION,
and PROVIDENT LIFE AND ACCIDENT INSURANCE
COMPANY,

                             Defendants.

------------------------------------------------------------X

15 Civ. 8425 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Susan Arkun, proceeding *pro se*, filed this lawsuit seeking a declaratory judgment that she is entitled to long-term disability benefits under a group of disability insurance plans issued by defendants and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Arkun alleges that she has suffered from "mal de debarquement" chronic persistent motion sickness, with symptoms such as nausea and visual instability, since roughly January 19, 1999, when she disembarked from a propeller aircraft ride. This, she claims, has left her disabled and unable to perform her former occupation as a tax attorney at a large law firm in Manhattan. Although defendants paid Arkun benefits for a period of time, they eventually ceased to do so after determining Arkun was no longer eligible for benefits under the plans. In this lawsuit, Arkun seeks a declaration of her entitlement to those benefits.

Defendants now move for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the ground that this action is time-barred. Arkun has not responded to defendants' motion. For the following reasons, the Court grants defendants' motion.

I. **Background**[1]

  A. **Factual Background**

Arkun was employed full-time as a tax attorney at the Manhattan office of the law firm Akin, Gump, Strauss, Hauer & Feld, LLP ("Akin Gump"). Complaint ¶ 7. On January 19, 1999, Arkun took a ride on a propeller aircraft, and, upon disembarking, became ill with "mal de debarquement," a rare form of chronic fatigue. *Id.* ¶¶ 10–11. The effects of this ailment manifest as nausea, "wooziness," and visual instability, among other symptoms, which Arkun has experienced since "the moment of disembarking until today." *Id.* Arkun sought medical care, and eventually exhausted her sick leave from Akin Gump. *Id.* ¶ 11. She was then placed on short term disability benefits through a policy held by Akin Gump. *Id.*

Arkun then qualified for long term disability benefits under a long term disability benefits policy held by Akin Gump, which defendants issued. *Id.* ¶¶ 8–9, 12. Defendants, through various insurance entities, had previously issued Policy Number 123811-0001, a Group Long Term Disability Insurance Policy (the "Policy"), effective April 1, 1998, to Akin Gump. *Id.*

---

[1] The Court draws its account of the underlying facts from defendants' statement of undisputed material facts pursuant to Local Civil Rule 56.1, Dkt. 16-5 ("Def. 56.1"), the affidavit of David White submitted in support of defendants' motion, Dkt. 16-4 ("White Decl."), and its attached exhibits, which include, as Exhibit A, the Policy. Portions of defendants' submissions were filed under seal and filed publicly with redactions; the Court granted defendants leave to so file, *see* Dkt. 15. Arkun has not opposed defendants' motion nor filed a response to the Def. 56.1, as required by Local Civil Rule 56.1. Arkun is therefore deemed to admit for purposes of the motion all substantiated factual propositions in the Def. 56.1, *see* Local Civil Rule 56.1(c). In addition to citing to the Def. 56.1 and the White affidavit, the Court cites, purely for background information, to Arkun's complaint, Dkt. 1 ("Complaint").

Arkun qualified for coverage under the Policy as a beneficiary because she was a "full time attorney excluding partners and counsel." *Id.* ¶ 8. The Policy is governed by ERISA. *See id.* ¶ 12. Arkun qualified for long term disability benefits under the Policy, and was eventually diagnosed with mal de debarquement, or "MDDS," a chronic persistent motion sickness. *Id.* ¶ 12 & n.3.

On or about September 16, 1999, Arkun filed for disability benefits under the Policy. Def. 56.1 ¶ 4. Arkun's claim was initially denied. On February 9, 2001, defendants sent Arkun a letter stating that she had failed to submit information from several medical tests. Complaint ¶ 15. Arkun then underwent the tests and submitted the medical information to defendants. *Id.* ¶¶ 15–19. On June 27, 2003, defendants resumed payments to Arkun and also issued payments retroactively for the period April 2000 through June 2003. *Id.* ¶ 19. Defendants continued to monitor her claim. Def. 56.1 ¶ 4.

On July 14, 2004, defendants notified Arkun by letter that, based upon their evaluation of the medical information received from her, they had determined that Arkun was no longer eligible for benefits under the Policy and were discontinuing her benefits as of that date. Complaint ¶ 21; Def. 56.1 ¶ 5; White Decl., Ex. B. In the letter, defendants advised Arkun that if she wanted to appeal their adverse claim determination, she would need to submit a written appeal within 90 days of the date of the letter. White Decl., Ex. B. The letter also stated: "The policy under which you were insured has a provision which states, in part, that no action in law or equity shall be brought to recover on the policy after the expiration of three years after the time written proof of loss is required to be furnished." *Id.* at 4.[2]

---

[2] The Policy provides: "Proof of Loss: Proof of Loss means written evidence satisfactory to us that Covered Persons are Disabled and entitled to LTD [Long Term Disability] Monthly Benefits. Proof of Loss must be provided at their expense." White Decl., Ex. A, at 25.

3

On or about July 27, 2004, Arkun appealed defendants' decision to deny her benefits under the Policy. White Decl. ¶ 6. On August 26, 2004, defendants acknowledged Arkun's appeal and, in response to a request she submitted, sent her a copy of the claim file, although without psychiatric raw data. *Id.* & White Decl., Ex. C. After confirming their ability to furnish this data to Arkun's treating physician, defendants later sent the data to Arkun's treating physician in response to Arkun's request. White Decl. ¶ 7. In the same letter, defendants also stated that Arkun's earlier letter had constituted a proper notice of appeal, but that, because Arkun had indicated she would submit additional medical documentation in support of her claim to benefits, defendants would "wait until further notice before initiating the appellate process" and that her appeal "will remain closed pending the additional data." White Decl., Ex. C.

More than four years later, on October 6, 2008, defendants received proof of loss from Arkun in the form of a report from her treating physician and a letter in support of her appeal of defendants' denial of her eligibility for benefits. White Decl. ¶ 8. Arkun did not ever submit any other information to defendants to support her appeal of their adverse determination. *Id.*

On March 20, 2009, after receiving this information, defendants issued their final decision on Arkun's appeal. Defendants upheld their prior determination, from July 14, 2004,

---

As to the timing of filing proof of loss, the Policy states: "Time Limits on Filing Proof of Loss: Covered Persons must give us Proof of Loss within 90 days after the end of the Elimination Period. If they cannot do so, they must give it to us when reasonably possible, but no later than 1 year after that 90-day period. If Proof of Loss is filed outside these time limits, their claim will be denied. These limits will not apply while Covered Persons lack legal capacity." *Id.*

And, as to the timing of seeking judicial review, the Policy provides: "Time Limits on Legal Actions: No Action at law or in equity may be brought until 60 days after Covered Persons have given us Proof of Loss and have exhausted all appeals. Such action may not be brought more than 3 years after the earlier of: 1. the date we receive Proof of Loss; or 2. the end of the period within which Proof of Loss is required to be given." *Id.* at 26.

4

that Arkun was not eligible for benefits under the Policy.  *Id.* ¶ 9 & Ex. D.  Defendants also advised Arkun that her claim was closed as of that date, and advised her of her right to bring a lawsuit under ERISA to dispute defendants' determination that she was ineligible for benefits under the Policy.  *Id.*  In particular, the March 20, 2009 letter stated: "If you dispute this determination, you have right to bring civil suit under section 502(a) of the Employee Retirement Income Security Act of 1974."  White Decl., Ex. D, at 4.

On September 21, 2012, Arkun wrote to Akin Gump to ask for a copy of the Policy as it applied in January 1999.  White Decl. ¶ 10 & Ex. E.  Arkun noted the urgency of her request and her concern about the statute of limitations.  White Decl., Ex. E.  The same day, Akin Gump forwarded that email to defendants.  *Id.*  On October 5, 2012, defendants mailed the applicable copy of the Policy to Arkun.  White Decl. ¶ 11 & Ex. F.

On October 22, 2015, more than three years later, Arkun brought this lawsuit.  Dkt. 1.

**B.     Procedural Background**

On October 22, 2015, Arkun, proceeding *pro se*, filed the Complaint.  Dkt. 1.  On June 29, 2016, defendants filed an answer.  Dkt. 9.  On July 13, 2016, the Court scheduled an initial conference, Dkt. 10, but, on July 20, 2016, Arkun filed a motion requesting that the initial conference be adjourned for five weeks, Dkt. 11.  On July 21, 2017, the Court issued an order denying that request, Dkt. 12, and instead referred this case to Magistrate Judge Gabriel W. Gorenstein for general pretrial supervision, Dkt. 13.  On September 8, 2016, Judge Gorenstein held an initial conference and ordered that discovery in this case be stayed to enable defendants to file a motion for summary judgment based on the statute of limitations.  On October 26, 2016, the Court granted defendants' request, made on Arkun's behalf, for leave to file under seal, and in public only in redacted form, various documents in support of their motion.  Dkt. 15.  On

November 21, 2016, defendants filed their motion for summary judgment, and included a memorandum of law, the Def. 56.1, and the White Decl. in support. *See* Dkt. 16. Arkun has not responded to defendants' motion nor otherwise taken any action since in this lawsuit.

## II. Standard of Review

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). Rather, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d

Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted).

A court must construe a *pro se* plaintiff's pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). A court must treat *pro se* litigants with "special solicitude" and interpret a *pro se* litigant's submissions as making the strongest arguments they suggest. *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation omitted).[3]

## III.  Discussion

Arkun's Complaint seeks a declaratory judgment that she is entitled to long-term disability benefits under the Policy, including to payment of benefits through the date of entry of judgment in this case, and to recoupment of her costs in bringing this action. *See* Complaint at 10. Defendants argue that Arkun filed this lawsuit beyond the applicable limitation period.

Under Section 502(a)(1)(B) of ERISA, a participant in an employee benefit plan governed by ERISA may bring a lawsuit "to recover benefits due to [him or her] under the terms of [his or her] plan, to enforce [his or her] rights under the terms of the plan, or to clarify [his or her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Although participants are generally required to exhaust the administrative remedies provided under a plan before filing a lawsuit under Section 502(a)(1)(B), ERISA does not itself set forth a statute of limitations period specifying when such lawsuits must be filed. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 610 (2013). Instead, the Supreme Court has held that,

---

[3] A court may provide a decreased degree of solicitude to a litigant proceeding *pro se* when "the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented," or in the case of "a lawyer representing himself [or herself]," who "ordinarily receives no such solicitation at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). Here, however, the Court affords the full degree of special solicitude to Arkun, whom the Court understands to have been a tax lawyer, not a litigator.

7

unless there is an applicable statute requiring the contrary, lawsuits brought under Section 502(a)(1)(B) are time-barred if filed after the limitations period set forth in the employee benefit plan itself, as such a time period is a contractual limitation agreed to by the plan participant and the plan issuer, so long as the time period required by the plan is reasonable. *Id.* A court "must give effect to [a] Plan's limitation provision unless [it] determine[s] either that the period is unreasonably short, or that a 'controlling' statute prevents the limitations provision from taking effect." *Id.* at 612.

This is so even when the plan requires a participant to file a lawsuit under Section 502(a)(1)(B) within a time period after the participant has submitted "proof of loss." *See id.* at 610, 614–16. Because ERISA and the regulations promulgated under it require plans to administer various pre-suit internal administrative reviews that cannot be begun until the participant submits proof of loss, and because the participant may not bring a Section 502(a)(1)(B) lawsuit until the plan's internal administrative review is complete, the effect of such a limitations framework may be to decrease the length of the contractual limitations period. However, so long as the period the participant has to file a lawsuit after proof of loss is reasonable both in itself and as measured after conclusion of the plan's internal review, the plan's limitations period is enforceable to bar as untimely late-filed lawsuits. *Id.* at 610, 616. In that situation, a court evaluates whether a plan's limitations period is reasonable based on the length of time (1) provided by the contractual provision and (2) actually left to the participant to file suit after the administrator's internal review concludes. *See id.* at 612–13. Judicial review of plan determinations is then limited, both because the record on review is usually limited to the administrative record compiled in the plan's internal review, and because benefits determinations are within the discretion of plan administrators, whose decisions are reviewed for abuse of

discretion. *Id.* at 614. Under this framework, "participants have much to lose and little to gain by giving up the full measure of internal review in favor of marginal extra time to seek judicial review." *Id.*

These principles foreclose Arkun's lawsuit as time-barred. Under the Policy, Arkun was required to seek judicial review within three years after she was required to submit proof of loss. Defendants notified her of this on July 14, 2004, when they first determined she was ineligible for benefits under the Policy. White Decl., Ex. B, at 4. Arkun then appealed that determination and indicated she would submit additional documentation in support of her appeal.[4] On October 6, 2008, defendants received this additional information—proof of loss—from Arkun and began their review of it. White Decl. ¶ 8. Arkun never submitted any other documentation to defendants. Less than six months later, on March 20, 2009, defendants denied Arkun's appeal and notified her that they were closing her case and that she had a right to bring a lawsuit seeking judicial review of their denial determination. White Decl., Ex. D, at 4.

Because Arkun submitted proof of loss on October 6, 2008, and because the terms of the Policy required that she seek judicial review within three years after she was required to submit proof of loss, Arkun was required to file this lawsuit by three years after October 6, 2008—that is, by October 6, 2011. She did not do so. She did not file this lawsuit until October 22, 2015, more than four years late and more than seven years after she had submitted her proof of loss to defendants.

Finally, the limitations period, both set forth in the Policy and as applied to Arkun, was reasonable such that the Court must give effect to it. The Policy required that Arkun sue within

---

[4] Defendants treat this as extending the deadline for Arkun to submit proof of loss and thus extending the commencement of the Policy's three-year limitations period until that point.

9

three years after the date she was required to submit proof of loss.  She had nearly two and a half years—from March 20, 2009 to October 6, 2011—to file a lawsuit after defendants' internal review denying her claim.  That period is not an unreasonably short one in which to bring a lawsuit and there is no statute governing the Policy that provides otherwise.

The Supreme Court's decision in *Heimeshoff* reinforces this holding.  The Court there upheld as reasonable a limitations period that was the same as that here, requiring that legal action be taken within three years after the time written proof of loss was required to be furnished under the policy.  *Heimeshoff*, 134 S. Ct. at 609.  And in *Heimeshoff*, the plaintiff was left with significantly less time to sue—"approximately one year"—due to a lengthy internal review period.  The Supreme Court nevertheless held (and the plaintiff did not dispute) that such a length of time was reasonable.  *Id.* at 612–13.  The Court noted that, as typical internal reviews under the plan are "resolved in about one year," plan participants—faced with a three-year limitations provision triggered by submission of proof of loss—are generally left "with two years to file suit," and that such a period is reasonable.  *Id.* at 612.  The Court further noted that, even if exhaustion of internal review usually takes 15–16 months, as certain data supplied to the Court indicated was common, "that still leaves ample time for filing suit."  *Id.* at 612 n.4.

Here, defendants' internal review of Arkun's appeal after she submitted proof of loss on October 6, 2008 took roughly six months, giving Arkun about two and a half years (starting March 20, 2009) to file her lawsuit (by October 6, 2011, three years after she submitted proof of loss).  Enforcement of that deadline is reasonable.  There is nothing in the record to suggest that "the administrator's conduct cause[d] [Arkun] to miss the deadline for judicial review" so as to give rise to a viable claim of estoppel, nor are there "extraordinary circumstances" supporting that, despite diligence, Arkun could not have timely filed her suit, so as to support equitable

10

tolling. *See id.* at 615; *see also Tuminello v. Aetna Life Ins. Co.*, No. 13 Civ. 938 (KBF), 2014 WL 572367, at *3 (S.D.N.Y. Feb. 14, 2014) ("Plaintiff's failure to consult the provisions of his plan and to file his complaint within the nine months after final denial of his LTD claim does not constitute such extraordinary circumstances."); *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 523 (S.D.N.Y. 2015) (concluding a period of "a year and two months to file this Action after denial of the appeal" was not unreasonably short).

This action is therefore time-barred. The Court accordingly grants defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment. The Clerk of Court is respectfully directed to mail a copy of this opinion and order to Arkun at her address of record.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 16, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: September 14, 2017
New York, New York